UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GLENN DAVID O'NEAL,<br><br>    Plaintiff,<br><br>    v.<br><br>J. PETERSON, et al.,<br><br>    Defendants. | No. 2: 13-cv-1054 KJN P<br><br><br>ORDER AND FINDINGS AND RECOMMENDATIONS |

Introduction

    Plaintiff is a state prisoner, proceeding without counsel, with a civil rights action pursuant to 42 U.S.C. § 1983. Pending before the court is defendants' motion for summary judgment. (ECF No. 33.) Defendants move for summary judgment on the grounds that plaintiff failed to exhaust administrative remedies and on the merits of plaintiff's claims.

    For the reasons stated herein, the undersigned recommends that defendants' motion be granted.

    On January 23, 2015, defendants filed a request that the declaration of C. Amrein in support of their motion for summary judgment be deemed timely filed. (ECF No. 35.) Good cause appearing, C. Amrein's declaration attached to defendants' January 23, 2015 request, is deemed timely filed.

////

1

Legal Standard:  Exhaustion of Administrative Remedies

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . , or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).  "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002).

Proper exhaustion of available remedies is mandatory, Booth v. Churner, 532 U.S. 731, 741 (2001), and "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules[.]" Woodford v. Ngo, 548 U.S. 81, 90 (2006). The Supreme Court has also cautioned against reading futility or other exceptions into the statutory exhaustion requirement. See Booth, 532 U.S. at 741 n.6.  Moreover, because proper exhaustion is necessary, a prisoner cannot satisfy the PLRA exhaustion requirement by filing an untimely or otherwise procedurally defective administrative grievance or appeal. See Woodford, 548 U.S. at 90-93. "[T]o properly exhaust administrative remedies prisoners 'must complete the administrative review process in accordance with the applicable procedural rules,' [] - rules that are defined not by the PLRA, but by the prison grievance process itself." Jones v. Bock, 549 U.S. 199, 218 (2007) (quoting Woodford, 548 U.S. at 88). See also Marella v. Terhune, 568 F.3d 1024, 1027 (9th Cir. 2009) ("The California prison system's requirements 'define the boundaries of proper exhaustion.'") (quoting Jones, 549 U.S. at 218).

In California, prisoners may appeal "any policy, decision, action, condition, or omission by the department or its staff that the inmate or parolee can demonstrate as having a material adverse effect upon his or her health, safety, or welfare." Cal. Code Regs. tit. 15, § 3084.1(a). On January 28, 2011, California prison regulations governing inmate grievances were revised. Cal. Code Regs. tit. 15, § 3084.7.  Now, inmates in California proceed through three levels of appeal to exhaust the appeal process:  (1) formal written appeal on a CDC 602 inmate appeal form, (2) second level appeal to the institution head or designee, and (3) third level appeal to the

Director of the California Department of Corrections and Rehabilitation ("CDCR"). Cal. Code Regs. tit. 15, § 3084.7. Under specific circumstances, the first level review may be bypassed. Id. The third level of review constitutes the decision of the Secretary of the CDCR and exhausts a prisoner's administrative remedies. See id. § 3084.7(d)(3). Since 2008, medical appeals have been processed at the third level by the Office of Third Level Appeals for the California Correctional Health Care Services. A California prisoner is required to submit an inmate appeal at the appropriate level and proceed to the highest level of review available to him. Butler v. Adams, 397 F.3d 1181, 1183 (9th Cir. 2005); Bennett v. King, 293 F.3d 1096, 1098 (9th Cir. 2002). Since the 2011 revision, in submitting a grievance, an inmate is required to "list all staff members involved and shall describe their involvement in the issue." Cal. Code Regs. tit. 15, § 3084.2(3). Further, the inmate must "state all facts known and available to him/her regarding the issue being appealed at the time," and he or she must "describe the specific issue under appeal and the relief requested." Cal. Code Regs. tit. 15, §§ 3084.2(a)(4). An inmate has thirty calendar days to submit his or her appeal from the occurrence of the event or decision being appealed, or "upon first having knowledge of the action or decision being appealed." Cal. Code Regs. tit. 15, § 3084.8(b).

Failure to exhaust is "an affirmative defense the defendant must plead and prove." Bock, 549 U.S. at 204, 216. In Albino, the Ninth Circuit agreed with the underlying panel's decision[1] "that the burdens outlined in Hilao v. Estate of Marcos, 103 F.3d 767, 778 n.5 (9th Cir. 1996),] should provide the template for the burdens here." Albino v. Baca, 747 F.3d 1162, 1172 (9th Cir. 2014) (en banc). A defendant need only show "that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." Albino, 747 F.3d at 1172. Once the defense meets its burden, the burden shifts to the plaintiff to show that the administrative remedies were unavailable. See Albino, 697 F.3d at 1030-31.

////

---

[1] See Albino v. Baca, 697 F.3d 1023, 1031 (9th Cir. 2012). The three judge panel noted that "[a] defendant's burden of establishing an inmate's failure to exhaust is very low." Id. at 1031. Relevant evidence includes statutes, regulations, and other official directives that explain the scope of the administrative review process. Id. at 1032.

A prisoner may be excused from complying with the PLRA's exhaustion requirement if he establishes that the existing administrative remedies were effectively unavailable to him. See Albino, 747 F.3d at 1172-73. When an inmate's administrative grievance is improperly rejected on procedural grounds, exhaustion may be excused as effectively unavailable. Sapp v. Kimbrell, 623 F.3d 813, 823 (9th Cir. 2010); see also Nunez v. Duncan, 591 F.3d 1217, 1224-26 (9th Cir. 2010) (warden's mistake rendered prisoner's administrative remedies "effectively unavailable"); Ward v. Chavez, 678 F.3d 1042, 1045 (9th Cir. 2012) (exhaustion excused where futile); Brown v. Valoff, 422 F.3d 926, 940 (9th Cir. 2005) (plaintiff not required to proceed to third level where appeal granted at second level and no further relief was available).

Where a prison system's grievance procedures do not specify the requisite level of detail for inmate appeals, Sapp, 623 F.3d at 824, a grievance satisfies the administrative exhaustion requirement if it "alerts the prison to the nature of the wrong for which redress is sought." Griffin v. Arpaio, 557 F.3d 1117, 1120 (9th Cir. 2009). "A grievance need not include legal terminology or legal theories unless they are in some way needed to provide notice of the harm being grieved. A grievance also need not contain every fact necessary to prove each element of an eventual legal claim. The primary purpose of a grievance is to alert the prison to a problem and facilitate its resolution, not to lay groundwork for litigation." Griffin, 557 F.3d at 1120.

If under the Rule 56 summary judgment standard, the court concludes that plaintiff has failed to exhaust administrative remedies, the proper remedy is dismissal without prejudice. Wyatt v. Terhune, 315 F.3d 1108, 1120 (9th Cir. 2003), overruled on other grounds by Albino, 747 F.3d 1162.

Legal Standard for Summary Judgment

Summary judgment is appropriate when it is demonstrated that the standard set forth in Federal Rule of Civil procedure 56 is met. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those

portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting then-numbered Fed. R. Civ. P. 56(c)).  "Where the nonmoving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case."  Nursing Home Pension Fund, Local 144 v. Oracle Corp. (In re Oracle Corp. Sec. Litig.), 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp., 477 U.S. at 325); see also Fed. R. Civ. P. 56 advisory committee's notes to 2010 amendments (recognizing that "a party who does not have the trial burden of production may rely on a showing that a party who does have the trial burden cannot produce admissible evidence to carry its burden as to the fact").  Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  Celotex Corp., 477 U.S. at 322.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Id. at 323.

Consequently, if the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually exists.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the existence of such a factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material in support of its contention that such a dispute exists.  See Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11.  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987), overruled in part on other grounds, Hollinger v. Titan Capital Corp., 914 F.2d

1564, 1575 (9th Cir. 1990).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 630. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving a summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 586 (citation omitted).

By contemporaneous notice provided on July 30, 2014, (ECF No. 22-2), plaintiff was advised of the requirements for opposing a motion brought pursuant to Rule 56 of the Federal Rules of Civil Procedure. See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (*en banc*); Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

Plaintiff's Claims

This action is proceeding on the second amended complaint filed April 28, 2014, as to defendants Williams, Peddicord and Gamberg. (ECF No. 22.) Plaintiff alleges that on March 20, 2012, he was attacked by his cellmate, inmate Finister. (Id. at 4.) At that time, plaintiff and

1  inmate Finister were housed at the California Correctional Institution ("CCI"). (Id.) After
2  plaintiff was moved out of the cell, inmate Finister attacked his next cellmate. (Id.) On August
3  15, 2012, plaintiff was transferred to High Desert State Prison ("HDSP"). (Id.) On October 24,
4  2012, plaintiff told defendants Williams, Peddicord and Gamberg about the attack by inmate
5  Finister and his resulting safety concerns. (Id.) Plaintiff alleges that defendants failed to properly
6  document plaintiff's safety concerns. (Id.) As a result of defendants' failure to document the
7  information regarding inmate Finister, both inmate Finister and plaintiff were housed on the same
8  yard at HDSP. (Id.) On February 21, 2013, inmate Finister attacked plaintiff, striking him
9  several times in the face and causing plaintiff to suffer pain and suffering. (Id.)

10 Background re:  Exhaustion of Administrative Remedies

11         The undersigned herein summarizes the three relevant administrative grievances filed by
12 plaintiff.

13         On or around July 19, 2012, plaintiff filed grievance CCI-12-1289 while he was housed at
14 CCI. (ECF No. 1 at 62.) In this grievance, plaintiff requested single cell status because he had
15 safety and security concerns regarding in-cell violence. (Id.) In support of this request, plaintiff
16 claimed that on March 20, 2012, he was attacked by his cellmate, inmate Finister. (Id.) Plaintiff
17 also cited two other incidents allegedly involving other cellmates on August 31, 2008, and April
18 29, 2008. (Id. at 63.)

19         On August 9, 2012, grievance CCI-12-1289 was denied at the second level of review. (Id.
20 at 64.) The response stated, in part, that plaintiff's current central file contained no
21 documentation indicating that he had been the victim of any assaults or batteries since his
22 incarceration in August 2011. (Id. at 65.) The response also stated that inmate Finister's central
23 file contained no documentation indicating that he had ever been involved in any altercation with
24 plaintiff. (Id.)

25         On December 11, 2012, grievance CCI-12-1289 was denied at the Third Level. (Id. at
26 78.) The Third Level decision stated that plaintiff was requesting single cell status. (Id.)

27         On September 10, 2012, following his transfer to HDSP, plaintiff filed grievance HDSP
28 2951. (ECF No. 33-6 at 5.) In this grievance, plaintiff alleged that he went before the

1 Classification Committee on August 21, 2012, and that the Classification Committee elected to
2 double cell him despite his safety concerns and history of cell violence. (Id.) Plaintiff requested
3 single cell status. (Id.) On October 8, 2012, defendant Peddicord partially granted this appeal.
4 (Id. at 14-15.) Defendant Peddicord ordered a classification hearing for plaintiff because it was
5 unclear whether the Unit Classification Committee, who plaintiff appeared before following his
6 transfer to HDSP, considered plaintiff's prior single cell status when considering his housing
7 status. (Id.)

8 On November 5, 2012, plaintiff resubmitted HDSP 12-2951 for a second level review.
9 (Id. at 11.) In this grievance, plaintiff alleged that on or about October 20, 2012, he appeared
10 before the Institutional Classification Committee ("ICC"). (Id.) Plaintiff complained that the
11 ICC elected to retain him on double cell housing "despite my history of cell violence, prior single
12 cell status, the recent assault on me by Shaun Finister on or about March 21, 2012, at the
13 California Correctional Institution..." (Id.)

14 On December 17, 2012, Chief Deputy Warden Foulk denied plaintiff's second level
15 grievance. (Id. at 16-17.) The response stated that plaintiff was appealing the Classification
16 Committee decision to double cell him despite his safety and security concerns. (Id. at 16.)
17 After summarizing the first level response, Chief Deputy Warden Foulk wrote:

> Your claim that the committee is suggesting that you have to be attacked, assaulted or injured by your cellmate or become engaged in some other form of disciplinary disruptive, fighting activity in order to be considered for single cell status is without merit. It is the departmental policy and the expectation that all inmates will be approved for double cell housing unless a classification committee determines otherwise.
>
> ****
>
> Further review of our C-File did not result in any information regarding you having been the victim of an assault during your current term, specifically on or about March 21, 2012. Additionally, your C-File contains a California Correctional Institution (CCI) Second Level Appeal response (Log # CCI-0-12-01289 see attached) regarding our single cell status. This appeal also indicates that ICC reviewed your case factors and determined that you do not meet the criteria for single cell housing. This appeal documents that a review of Inmate Finister's (the inmate you claim assaulted you) C-File was reviewed and contained no documentation indicating that he had ever been involved in any

> altercation with you. Your claim that you and your current cellmate are not compatible is something you should address with your housing unit staff to facilitate a bed move with someone you feel you are more compatible with. Records indicate that since filing this appeal you received a new cellmate, effective November 18, 2012.
>
> Based on this information your appeal was denied. You have not presented any documentation that would warrant further review of your housing status. You will continue to be double celled.

(Id. at 17.)

On January 11, 2013, plaintiff submitted HDSP 12-2951 to the third level of review. (Id. at 11.) Plaintiff again complained that prison staff disregarded his safety concerns by double celling him. (Id.) Apparently referring to his October 20, 2012 ICC hearing, plaintiff also wrote that the ICC improperly found that his safety concerns were unfounded because the majority of the cell violence he experienced occurred under his former CDC number. (Id. at 13.) Plaintiff also wrote, "This type of analysis of this volatile situation only serves to promote cell violence and ICC's desire to see me injured by inmates, staff and prosecuted for defending myself from harm." (Id.)

On May 20, 2013, plaintiff's Third Level Appeal of grievance 12-2951 was denied. (Id. at 18.) This response stated, in relevant part,

> The examiner has reviewed the CDC Form 128-G, Classification Chrono dated October 24, 2012, and finds that the High Desert State Prison (HDSP) ICC acted in accordance with the mandates of the CCR in determining the appellant's double cell status. After considering the evidence and arguments herein, it has been determined that staff acted appropriately on the appellant's request. There shall be no relief afforded to the appellant at the TLR.
>
> The appellant has added new issues and requests to his appeal. The additional requested action is not addressed herein as it is not appropriate to expand the appeal beyond the initial problem and the initially requested action (CDC Form 602, Inmate/Parolee Appeal Form, Sections A and B).

(Id. at 19.)

On March 7, 2013, plaintiff filed grievance HDSP 13-717. (ECF No. 33-6 at 21.) In this grievance, plaintiff alleged that on February 21, 2013, he was improperly placed on the same yard as an enemy, i.e., inmate Finister, who then hit plaintiff in the head. (Id.) On August 8, 2013,

9

this grievance was denied at the Third Level of Review. (ECF No. 33-4 at 8-9.)

Discussion: Exhaustion of Administrative Remedies

Defendants argue that plaintiff filed two administrative grievances related to the claims raised in the second amended complaint, i.e., grievance nos. HDSP 13-717 and HDSP 12-2951, but that neither grievance exhausted plaintiff's administrative remedies. In his opposition, plaintiff argues that grievance nos. CCI 12-1289 and HDSP 12-2951 exhausted his administrative remedies.

*HDSP 13-717*

Defendants state HDSP 13-717, which raised the claims brought in the instant action, did not exhaust administrative remedies because it was completed after plaintiff filed this action. See McKinney v. Carey, 311 F.3d 1198, 1199 (9th Cir. 2002) (administrative exhaustion must be complete prior to the filing of a civil rights action).

On August 8, 2013, HDSP 13-717 was denied at the third level of review. (ECF No. 33-4 at 8-9.) Pursuant to the mailbox rule, plaintiff filed this action on May 15, 2013. (ECF No. 1 at 84.) See Houston v. Lack, 487 U.S. 266 (1988); Douglas v. Noelle, 567 F.3d 1103, 1107 (9th Cir. 2009) (a pro se prisoner's court filing is deemed filed at the time the prisoner delivers it to prison authorities for forwarding to the court). Thus, HDSP 13-717 did not exhaust plaintiff's administrative remedies because it was not exhausted before plaintiff filed this action.[2]

*HDSP 12-2951*

In the summary judgment motion, defendants make several arguments regarding why HDSP 12-2951 did not exhaust plaintiff's administrative remedies. The undersigned need not address these arguments, some of which are unmeritorious, because HDSP 12-2951 did not exhaust plaintiff's administrative remedies for one clear reason: plaintiff did not exhaust HDSP 12-2951 prior to bringing this action.[3] As noted above, pursuant to the mailbox rule, plaintiff

---

[2] In Cano v. Taylor, 739 F.3d 1214, 1221 (9th Cir. 2014), the Ninth Circuit found that new claims added to a lawsuit via amendment that are exhausted prior to the amendment comply with the exhaustion requirement. Cano is inapplicable because plaintiff raised his failure to protect claims against defendants in the original complaint, i.e., these are not "new" claims.

[3] Defendants argue, in part, that grievance HDSP 12-2951 did not exhaust plaintiff's

filed this action on May 15, 2013. (ECF No. 1 at 84.) The third level decision denying HDSP 12-2951 was issued on May 20, 2013. (ECF No. 33-6 at 18.) Thus, plaintiff filed this action before he exhausted HDSP 12-2951.

*CCI-12-1289*

Plaintiff argues that CCI-12-1289 exhausted his administrative remedies. As discussed above, in this grievance plaintiff requested single cell status. In support of this request, plaintiff stated that he had been attacked by inmate Finister in March 2012.

On January 28, 2011, CDCR regulations were amended to state that administrative remedies are not exhausted as to any person later named by the appellant who was not included in the original grievance: "Administrative remedies shall not be considered exhausted relative to any new issue, information, or person later named by the appellant that was not included in the originally submitted [appeal] and addressed through all required levels of administrative review up to and including the third level." Cal.Code Regs. tit. 15, § 3084.1(b). Plaintiff filed his first level grievance in CCI-12-1289 in 2012. (ECF No. 33-10 at 10-12.) Thus, CCI-12-1289 was subject to these amended regulations.

CCI 12-1289 was denied at the third level on December 11, 2012, i.e., before this action was filed. (ECF No. 33-10 at 4.) While CCI-12-1289 raised plaintiff's security concerns regarding inmate Finister, it did not name defendants Peddicord, Gamberg and Williams as plaintiff had not yet been transferred to HDSP. Therefore, because CCI-12-1289 did not name these defendants, this grievance did not exhaust plaintiff's claims.

////

---

administrative remedies because the issue raised in that grievance was plaintiff's request to be single celled, and not to be placed on the same yard as inmate Finister. While the focus of HDSP 12-2951 was plaintiff's request to be single celled, in this grievance plaintiff raised his security concerns regarding inmate Finister based on the alleged prior attack. In fact, the second level response in HDSP 12-2951 specifically referenced inmate Finister and plaintiff's security concerns. Plaintiff's claims in grievance HDSP 12-2951 were sufficient to put defendants on notice that plaintiff not only did not want to be celled with inmate Finister, but did not want to be placed on the same yard as inmate Finister. See Morton v. Hall, 599 F.3d 942, 946 (9th Cir. 2010) (a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought).

*Conclusion*

For the reasons discussed above, the undersigned finds that plaintiff failed to exhaust his administrative remedies. On this ground, defendants' summary judgment motion should be granted.

Discussion: Eighth Amendment

Defendants also argue that they are entitled to summary judgment on grounds that they did not violate plaintiff's Eighth Amendment rights, plaintiff suffered no injury, and on grounds that they are entitled to qualified immunity.

*Legal Standard for Eighth Amendment Failure to Protect Claim*

The Eighth Amendment's prohibition on cruel and unusual punishment imposes on prison officials, among other things, a duty to "take reasonable measures to guarantee the safety of the inmates." Farmer v. Brennan, 511 U.S. 825, 832 (1991) (quoting Hudson v. Palmer, 468 U.S. 517, 526–27 (1984)). "'[P]rison officials have a duty ... to protect prisoners from violence at the hands of other prisoners.'" Id. at 833. "[A] prison official violates the Eighth Amendment when two requirements are met. First, the deprivation alleged must be, objectively, 'sufficiently serious[.]' For a claim ... based on a failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." Id. at 834.

Second, "[t]o violate the Cruel and Unusual Punishments Clause, a prison official must have a 'sufficiently culpable state of mind' ... [T]hat state of mind is one of 'deliberate indifference' to inmate health or safety." Id. The prison official will be liable only if "the official knows of and disregards an excessive risk to inmate health and safety; the officials must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837.

*Legal Standard for Qualified Immunity*

In analyzing a claim of qualified immunity, a court must examine (1) whether the facts as alleged, taken in the light most favorable to plaintiff, show that the defendant's conduct violated a constitutional right, and (2) if a constitutional right was violated, whether, "in light of the specific context of the case," the constitutional right was so clearly established that a reasonable official

would understand that what he or she was doing violated that right. See Saucier v. Katz, 533 U.S. 194, 201–02 (2001). If no constitutional right was violated, the inquiry ends and the defendant prevails. Saucier, 533 U.S. at 201.

To meet the "clearly established" requirement, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987). This requires defining the right allegedly violated in a "particularized" sense that is "relevant" to the actual facts alleged. Id. "Because the focus is on whether the officer had fair notice that her conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct." Brosseau v. Haugen, 543 U.S. 194, 198 (2004).

Courts are not required to address the two inquiries in any particular order. Rather, courts may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Pearson v. Callahan, 555 U.S. 223, 243 (2009).

*Undisputed Facts*

Defendants' summary judgment motion contains a statement of undisputed facts. Plaintiff's summary judgment motion did not reproduce defendants' statement of undisputed facts, and address them by admitting those facts that are undisputed and denying those that are disputed, as required by Local Rule 260(b). Instead, plaintiff filed a pleading titled "Statement of Disputed Facts." With some modification, the undersigned herein adopts defendants' statement of undisputed facts, to the extent that they are not disputed by admissible evidence submitted by plaintiff.

Plaintiff was housed at the California Correctional Institution ("CCI") from August 2011 to August 2012, and housed at High Desert State Prison ("HDSP") from August 2012 to April 2014. (ECF No. 33-7 at 6-7.) At all relevant times, defendant Gamberg was employed as a Correctional Lieutenant at HDSP. (ECF No. 33-5 at 1.) At all relevant times, defendant Williams was employed as a Correctional Counselor II at HDSP. (ECF No. 33-9 at 1.) At all

////

13

1 relevant times, defendant Peddicord worked as an Associate Warden at HDSP.  (ECF No. 33-8 at
2 1.)
3    Defendants' job duties included participating in classification committee hearings for the
4 placements of inmates at HDSP.  (ECF No. 33-5 at 1; ECF No. ECF No. 33-8 at 1; ECF No. 33-9
5 at 1.)
6    Inmate Finister is an inmate incarcerated within the California Department of Corrections
7 and Rehabilitation ("CDCR").  (ECF No. 35 at 5.)   Plaintiff and inmate Finister were cellmates
8 at CCI for approximately three days beginning on or around March 18, 2012.  (ECF No. 33-7 at
9 9-11.)  Both plaintiff and Finister agreed to this arrangement verbally and by signed writing,
10 including an acknowledgment of their compatability.  (Id. at 9-11, 26.)
11    Inmate Finister was housed at HDSP from December 19, 2012, to September 18, 2013.
12 (ECF No. 35 at 5-6.)  Plaintiff and inmate Finister were never cellmates at HDSP.  (Id. at 6.)
13    On or around October 24, 2012, plaintiff received the classification committee hearing
14 ordered by defendant Peddicord in response to grievance HDSP 12-2951.  (ECF No. 33-5.)
15 Defendants Peddicord, Gamberg and Williams were members of the committee who conducted
16 this hearing.  (Id.)  The classification committee recommended that plaintiff be double-celled.
17 (Id.)
18    There is no reference in the central file of either plaintiff or inmate Finister that they were
19 enemies or had ever been involved in an altercation together at any time prior to October 24,
20 2012.  (ECF No. 35 at 6.)  Neither inmate was on the other's confidential or non-confidential
21 enemy lists during this time.  (Id.)  There are no records of Crime/Incident Reports, Rules
22 Violation Reports or Administrative Segregation Placement forms that pertain to any incident or
23 altercation between these inmates during this time.  (Id.)
24    On February 21, 2013, plaintiff and inmate Finister were involved in an altercation at the
25 HDSP prison yard.  (ECF No. 33-7 at 11-12; 27.)  Plaintiff was examined by a nurse after the
26 incident.  (Id. at 28.)
27 ////
28 ////

*Analysis:  Eighth Amendment Claim*

Defendants argue that they are entitled to summary judgment on both the objective and subjective components of deliberate indifference.  In support of this argument, defendants refer to their declarations submitted in support of their summary judgment motions.  In relevant part, defendants Gamberg, Williams and Peddicord all state,

> 4.  Based on my review of the Chrono, I am aware that the subject hearing was conducted for the purpose of reviewing inmate O'Neal's cell status, and specifically was required because the prior Initial Review of inmate O'Neal by the Unit Classification Committee approved him for double cell status but did not address his previous single cell status.  The subject of the hearing was not conducted for the purpose of addressing safety concerns to inmate O'Neal based on threats posed by any particular inmate, including inmate S. Finister.  The sole purpose of the hearing was to review and address inmate O'Neal's cell status as double celled or single celled.
>
> 5.  Based on my review of the Chrono, I am aware that the only decision made at the subject hearing was to continue O'Neal as double cell approved.  In doing so, the ICC noted inmate O'Neal's second level appeal log number CCI-12-1289 requesting single cell status, which was denied.  In doing so, the ICC reviewed inmate O'Neal's enemy list documentation.

(ECF No. 33-5 at 2; ECF No. 33-8 at 2; ECF No. 33-9 at 2.)

In his declaration, defendant Gamberg additionally states:

> 6.  If during a classification committee hearing such as the one conducted for inmate O'Neal on October 24, 2012, the reviewee inmate claims that another inmate is his enemy, then the matter is investigated to determine whether there are records documenting the reviewee inmate's claims.  If there are no records or other documentary evidence to support the reviewee inmate's claims, then under applicable policies and procedures the other inmate identified by the reviewee inmate is not listed as an enemy on the reviewee inmate's Nonconfidential Enemies CDC Form 812 (enemy list).

(ECF No. 33-5 at 2.)

Defendants first argue that plaintiff did not meet the objective component of deliberate indifference because at the time of the October 24, 2012 hearing, inmate Finister was not at

////

////

15

HDSP.[4]  Thus, defendants argue, plaintiff did not face a substantial risk of harm from being attacked by inmate Finister on October 24, 2012.  In essence, defendants argue that the threat posed by inmate Finister to plaintiff was not sufficiently imminent because inmate Finister was not housed at HDSP in October 2012.  However, the fact that defendants reviewed plaintiff's enemy list and grievance CCI 12-1289 in October 2012 in response to his claim that inmate Finister attacked him in March 2012 demonstrates that plaintiff's security concerns were sufficiently imminent if they were substantiated.[5]  Thus, even though inmate Finister was not housed at HDSP in October 2012, defendants perceived a threat to plaintiff.  Defendants do not claim that the risk to plaintiff from being celled with inmate Finister was substantially different from the risk plaintiff faced were he and inmate Finister placed on the same yard.  For these reasons, the undersigned finds that plaintiff met the objective component of the test for deliberate indifference.

Defendants argue that they are entitled to summary judgment as to the subjective component of deliberate indifference for three reasons:  1) the only issue purpose of the October 2012 hearing was to address plaintiff's safety concerns caused by cellmates; 2) at the October 2012 hearing, plaintiff raised the issue of his safety concerns regarding inmate Finister in the context of his request for single cell status; and 3) defendants adequately investigated plaintiff's safety concerns regarding inmate Finister at the October 2012 hearing insofar as they concerned plaintiff's request for single cell status.

////

---

[4]  Defendants do not argue that inmate Finister did not attack plaintiff in March 2012.  At his deposition, plaintiff testified in detail regarding the alleged March 2012 attack.  (See plaintiff's deposition transcript at 30-36.)  Taking the facts in the light most favorable to plaintiff, the undersigned finds that inmate Finister attacked plaintiff in March 2012.

[5]  The undersigned also notes that in Horton v. Cockrell, 70 F.3d 397, 401 (5th Cir. 1995), the Fifth Circuit held that, for an Eighth Amendment claim, a court must consider whether society considers the risk "to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk.  [The court] must consider the Eighth Amendment is intended to protect both present and future dangers to inmates.  Prison authorities must protect not only against current threats, but also guard against sufficiently imminent dangers that are likely to cause harm in the next week, or month or year."

For the following reasons, the undersigned is not persuaded by defendants' argument that they are not liable for inmate Finister's attack on plaintiff in the yard in February 2013 because plaintiff raised his security concerns regarding inmate Finister at a hearing addressing plaintiff's request for single cell status.

As discussed above, a prison official will be liable only if "the official knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. at 837.

At the October 2012 hearing, plaintiff told defendants that he had been previously attacked by inmate Finister.[6] Based on this information, defendants drew the inference that plaintiff would face a serious risk of harm were he to be celled with inmate Finister if the March 2012 attack could be substantiated, as evidenced by their review of grievance CCI 12-1289 and plaintiff's enemy list. If defendants drew the inference that it would be dangerous for plaintiff to be celled with inmate Finister were there evidence of the previous attack, it is unclear why they would not go on to draw the inference that plaintiff faced a similar risk of harm were he and inmate Finister to be housed on the same yard.

As noted above, defendants do not claim and offer no evidence that the risk of harm plaintiff faced were he placed on the same yard as inmate Finister was substantially different from the risk of harm he faced were he and inmate Finister celled together. Without further explanation, the undersigned cannot find that defendants were entitled to disregard all of the other security issues reasonably implicated by plaintiff's claim that he was previously attacked by inmate Finister, simply because plaintiff informed defendants of the previous attack and raised his safety concerns in the context of a hearing addressing his request for single cell status.

Defendants next argue that the properly reviewed plaintiff's security concerns regarding inmate Finister in the context of the hearing in which they were raised. As discussed above, defendants have not demonstrated that they were entitled to disregard the security issues

---

[6] At his deposition, plaintiff testified that at the October 2012 classification hearing, he told defendants that "I reiterated that I had – was attacked." (Plaintiff's deposition at 73.)

17

reasonably implicated by plaintiff's claim that he was previously attacked by inmate Finister.

Moreover, defendants seem to suggest that had plaintiff raised his security concerns regarding inmate Finister in a different type of classification hearing, they would have been reviewed more thoroughly. In their declarations, defendants' state that their review of plaintiff's security concerns was limited to the context of plaintiff's request for single cell housing, suggesting that they would have conducted a different review had he raised these concerns at a different hearing. However, defendant Gamberg also states that when an inmate raises enemy concerns at the classification hearing like the one conducted on October 22, 2012, those concerns are investigated. Without further clarification regarding the scope of the review defendants would have conducted had plaintiff raised his security concerns in a different type of classification hearing, the undersigned cannot find that defendants did not act with deliberate indifference.

While defendants should not be granted summary judgment with respect to their arguments that plaintiff did not meet the objective or subjective components for an Eighth Amendment claim, defendants are entitled to summary judgment for another reason. In order to prevail, plaintiff must establish that defendants' deliberate indifference was the "actual and proximate cause of the deprivation of [his] Eighth Amendment right." Leer v. Murphy, 844 F.2d 628, 634 (9th Cir. 1988). Actual cause is established if the plaintiff's injury would not have occurred "but for" the defendants' conduct. White v. Roper, 901 F.2d 1501, 1505 (9th Cir. 1990). To satisfy the "but for" test, the defendants' conduct must be at least one of the causes of plaintiff's injury. Id. at 1506.

Plaintiff has not demonstrated that defendants' conduct at the October 2012 classification committee hearing was one of the causes of inmate Finister's attack on him in January 2013. It is undisputed that there is no reference in the central file of either plaintiff or inmate Finister that they were enemies or had ever been involved in an altercation together at any time prior to October 24, 2012. It is undisputed that neither inmate was on the other's confidential or non-confidential enemy lists during this time.

////

Plaintiff suggests that documentation existed in CDCR records to support his claim that inmate Finister attacked him in March 2012.  Plaintiff has provided no evidence to support this claim.  Most importantly, at his deposition, plaintiff testified he did not report the March 20, 2012 attack by inmate Finister.  Plaintiff testified that after the March 20, 2012 attack, a responding officer asked him if he (the officer) would have to do any paperwork.  (Plaintiff's deposition at 38.)  Plaintiff told him "no," because plaintiff was trying to program and get out of the segregated housing unit.  (Id. at 38-39.)  Therefore, the only references in CDCR records to the alleged attack were plaintiff's self-serving claims in his administrative grievances filed after the attack.  Thus, even if defendants had conducted a more thorough review of the record, they would have uncovered no actual evidence of the March 2012 attack.

Plaintiff's failure to report the attack caused him to be housed on the same yard with inmate Finister rather than any alleged inadequate review of the record by defendants.  For that reason, the undersigned finds that defendants should be granted summary judgment as to the merits of plaintiff's Eighth Amendment claim.  Because the undersigned finds that plaintiff has failed to establish causation, there is no need to further address the issue of qualified immunity.

<u>Cognizable Injury</u>

Defendants also move for summary judgment on grounds that plaintiff suffered no cognizable injury.  The undersigned does not address this argument because defendants should be granted summary judgment on the grounds discussed above.

Accordingly, IT IS HEREBY ORDERED that the Clerk of the Court is directed to assign a district judge to this action; and

IT IS HEREBY RECOMMENDED that defendants' summary judgment motion (ECF No. 33) be granted.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the

1  objections shall be filed and served within fourteen days after service of the objections.  The
2  parties are advised that failure to file objections within the specified time may waive the right to
3  appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).
4  Dated:  March 13, 2015

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

On1054.sj